IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISIONS OF ST. CROIX

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIM. NO. 2010-16 |
| v. ) | |
| ) | |
| CHENELLE SIMMONDS, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW Defendant, CHENELLE SIMMONDS, and her counsel, Patricia Schrader-Cooke and respectfully submits this Sentencing Memorandum for the Court's consideration.

District courts are required to engage in a three step process when imposing sentence. First, the defendant's guideline range must be calculated. Second, the court must formally rule on any objections or departure motions and articulate how the ruling affects the guideline calculation, and third, the court must consider the factors enumerated in 18 U.S.C. Section 3553(a) in setting the sentence without regard for the guideline range. United States v.Larkin, 629 F.3d 177 (3d Cir. 2010). Those factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to:

A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

B) to afford adequate deterrence to criminal conduct;

C) to protect the public from further crimes of the defendant;

and

D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. Section 3553(a)(2). In fashioning a sentence that complies with the "overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to achieve the goals of sentencing," United States v. Kimbrough, 128 S.Ct. 558, 570(2007), the judge must consider the following factors.

## THE OFFENSE CONDUCT

On April 17, 2004, there was an attempted robbery of the Wendy's Restaurant in Sunny Isle. Virgin Islands Police Officer Eugene Cuthbert was shot and killed by one of the assailants. Officer Cuthbert was off-duty and was working as a security guard at the restaurant. Four men were charged in the murder and attempted robbery. Two of those men were known by aliases and those aliases were included on the indictment. Troy Moore was known as "C-murder" and "O-murder." Angel Rodriquez was known as "Malungo" or "Dungo." The defendants in the Wendy's robbery were detained at the Metropolitan Detention Center ("MDC") in Guaynabo, Puerto Rico following their arrest. During the investigation of the robbery, agents obtained recorded telephone conversations from MDC of the men conversing about the murder and using the aliases.

Agents also discovered a cell phone found in a car that was used during the commission of the robbery. Sandra Graham's home phone number was one of the numbers found in the phone. Ms. Graham was called and questioned regarding the occupants of her home and her knowledge of Angel Rodriquez. She indicated that her daughter Chenelle Simmonds was friends with Mr. Rodriquez.

Ms. Simmonds was questioned by agents regarding her knowledge of Angel Rodriguez approximately 2-4 months after the robbery. The interrogations where held in the United States Attorney's Office in Christiansted.  Ms. Simmonds was accompanied by her mother.

Ms. Simmonds was subpoenaed to appear in front of a grand jury on St. Thomas on May 13, 2005.  She was informed that this was a hearing that was secret and not a public hearing.  On January 25, 2007, Chenelle was called to testify during the Wendy's trial.  She testified that she was not familiar with the nicknames and that she previously lied at the grand jury hearing because she was paid by VIPD Officer Matthews to do so.

Chenelle Simmonds was charged in a two count indictment on May 6, 2010, with perjury in violation of 21 U.S.C. Section 1621 in Count I and false declaration before a grand jury or court in violation of 18 U.S.C. Section 1623 in Count II.  Ms. Simmonds entered a guilty plea to both counts on December 3, 2010.

## HISTORY AND CHARACTERISTICS OF MS. SIMMONDS

Ms. Simmonds was born on [REDACTED] and is the fourth of eight children.  Her mother, Sandra Graham and her father, Cedric Simmonds were not married and terminated their relationship when Ms. Simmonds was fourteen years old.  Ms. Simmonds and her siblings were raised by her mother and father in public housing, first, in the Lyndon B. Johnson Gardens, then in the Ralph D. Chabert Housing Community.  Presently, Ms. Simmonds, her mother and brother reside in John F. Kennedy Housing Community.

Ms. Simmonds attended the Juanita Gardine Elementary School and the Elena Christian Junior High School.  Ms. Simmonds did not finish high school and is presently enrolled in adult education classes.  From 2001-2003, Ms. Simmonds was employed at America's Paradise Gym. After the gym closed, Ms. Simmonds gained employment at Subway in Christiansted in 2004.

She worked there for two years, then became employed at Vinny's Restaurant in Sunny Isle. In late 2009, she was terminated.

At the time of the Wendy's murder, Ms. Simmonds was 19 years old and was employed at Subway in Christiansted. She lived in John F. Kennedy Housing with her mother and siblings.

Ms. Simmonds has no prior criminal history. She has no arrests and no convictions. She has always tried to maintain employment. There is nothing in her history that would suggest that she is a danger to the community or that she would commit further crimes.

**SENTENCING FACTORS**

The District Court must consider the mandates of Section 3553(a) in fashioning a sentence with regard to Ms. Simmonds as an individual. In determining the minimally sufficient sentence, Section 3553(a) further directs sentencing courts to consider the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant (Section 3553(a)(1));
(2) the kinds of sentences available (Section 3553(a)(3));
(3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (section 3553(a)(6)); and
(4) the need to provide restitution to any victims of the offense (Section 3553(a)(7)).

Regarding the nature and circumstances of the offense, the facts in this case are straight forward. During the investigation of the Wendy's robbery, agents discovered a cell phone in a vehicle used by the perpetrators. Sandra Graham's number was one of the numbers on the phone. Agents questioned Ms. Graham and learned that her daughter was a friend of Angel Rodriquez, one of the suspects. When questioning Ms. Simmonds regarding the robbery, agents discovered that Ms. Simmonds knew two of the suspects. She also knew that they used aliases. These aliases were used in the suspects discussion of the Wendy's robbery during their pretrial detention in Puerto Rico. The agents questioned Ms. Simmonds in secret and she was truthful.

She testified at the grand jury hearing and she was truthful. When testifying at public trial, Ms. Simmonds was untruthful. The Wendy's robbery defendants were nevertheless convicted. Ms. Simmonds confessed before entering her plea that she was afraid that harm would come to her and her family if she testified against the defendants at trial.

An appropriate sentence is one that is not in excess of what is minimally sufficient to achieve the purposes of 18 U.S.C. 3553(a)(2). In this case, the Court can impose a sentence of probation or a term of incarceration of up to 60 months.

Section 3553(a)(2)(A) requires the district court to consider the "need for the sentence imposed...to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense." An excessive sentence in light of the offense can promote disrespect for the law and provide an unjust punishment. The Background of Section 2J1.3 of the United States Sentencing Guidelines states that the pre-guidelines practice estimate for a perjury conviction was **ten** months; here Ms. Simmonds' guideline range is 70-87 months. The Sentencing Commission reasoned that a higher penalty than the pre-guidelines ten months was provided in order to treat a perjury charge similar to that of obstruction of justice. Both offenses have a base offense level of 14 (15-21 months). After cross referencing to the accessory after the fact guideline, Ms. Simmonds ends up with a guideline range seven times the pre-guidelines practice estimate of ten months. A guideline sentence in this case would result in extreme disparity among defendants convicted of the same conduct.

The seriousness of an offense may be lessened if the crime was victimless or not violent. *See* 28 U.S.C. Section 994(j) (prison is generally inappropriate in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, while some term of imprisonment is generally appropriate for a person convicted of a

crime of violence that results in serious bodily injury).  Here, Ms. Simmonds has no prior criminal history and this was not a crime of violence.  A sentence of imprisonment would be inappropriate here.

Section 3553(a)(2)(B) requires the district court to consider "the need for the sentence imposed...to afford adequate deterrence to criminal conduct."  The mere fact of the arrest, prosecution, and conviction of Ms. Simmonds has provided any direct deterrent effect that can be gained.  The severity of the sentence will not necessarily provide an additional deterrent effect.  Ms. Simmonds became a witness because the government needed testimony regarding aliases. Ms. Simmonds committed the offense because she was afraid for herself and her family.  She has two felony convictions for a crime she committed when she was nineteen years old.  She has the rest of her life to live with the consequences.  Regarding the deterrent effect on others, many potential criminals do not believe they will be apprehended and convicted and therefore, they do not consider sentencing consequences in a manner that one might expect.

Section 3553(a)(2) © requires the district court to consider the "need for the sentence imposed ... to protect the public from further crimes of the defendant."  This purpose has to do with both the defendant's risk of recidivism and the danger posed by the defendant, if any.  Ms. Simmonds' criminal history does not show any violations of law and therefore, her risk of recidivism is low. Further, she has never been considered a danger to the community by the Court.  She was allowed release during the pendency of this matter.  Additionally, evidence has shown that women recidivate at a lower rate than men. See California Department of Corrections and Rehabilitation, 2010 Adult Institutions Outcome Evaluation Report, Office of Research (October 11, 2010).

Section 3553(a)(2)(D) requires the district court to consider "the need for the sentence

imposed...to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Rehabilitation is one of the most effective tools against recidivism. A lengthy prison sentence would disrupt pursuit of Ms. Simmonds' high school diploma, reduce prospects of future employment, weaken family ties, and expose her to more serious offenders which can lead to an increased risk of recidivism. Ms. Simmonds' conduct was unfortunate and unlawful. She is exposed to a maximum sentence of five years. However, there is no mandatory minimum and the Court can impose a sentence of probation for at least one year.

DATED: March 15, 2011

                                                Respectfully submitted,

                                                /s/ Patricia Schrader-Cooke
                                                Patricia Schrader-Cooke, Esq.
                                                Asst. Federal Public Defender
                                                1115 Strand Street
                                                St. Croix, VI  00822
                                                (340)  773-3585

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that this document, filed through the  ECF system, will be sent electronically to registered participants and paper copies will be sent to non-registered participants on this 15th day of March, 2011.

                                                /s/ Patricia Schrader-Cooke